UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TERRENCE PREDDIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-00995-TWP-DML |
| | ) | |
| BARTHOLOMEW COUNTY | ) | |
| CONSOLIDATED SCHOOL | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Bartholomew County Consolidated School Corporation's ("BCSC") Motion for Summary Judgment ([Filing No. 28](Filing No. 28)). Plaintiff Terrence Preddie ("Mr. Preddie") brought claims against BCSC under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"); the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"); the Civil Rights Act of 1886, 42 U.S.C. § 1981 *et seq.* ("§ 1981"); the Civil Rights Act of 1991, 42 U.S.C. § 1981a; and the Civil Rights Act of 1871, 42 U.S.C. § 1983 *et seq.* ("§ 1983").[1] Mr. Preddie alleges that BCSC discriminated and retaliated against him on the basis of race and disability, as well as interfered with his rights under FMLA. For the reasons set forth below, BCSC's Motion for Summary Judgment is **GRANTED**.

### I. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[1] Mr. Preddie's Complaint also mentions 42 U.S.C. § 1986; however, neither party addressed this statute in their briefing. Therefore, the Court finds that this claim has been abandoned and waived.

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat the motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). "[N]either the mere existence of some alleged factual dispute between the parties . . . nor the existence of some metaphysical doubt as to the material facts . . . is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## II. BACKGROUND

### A. Objections to Evidence

As an initial matter, the Court notes that BCSC has objected in several respects to Mr. Preddie's affidavit in support of his evidence. Specifically, BCSC alleges that Mr. Preddie's affidavit ([Filing No. 50-1](#)) includes "self-serving conclusory statements not shown to be made on personal knowledge and contrary to his deposition testimony in this cause." ([Filing No. 52 at ECF p. 9](#)). The Court agrees that such discrepancies exist. For example, in Mr. Preddie's affidavit, he claims that Dr. Diane Clancy ("Dr. Clancy") told him that his "ongoing use of leave pursuant to

2

BCSC policy, FMLA or the ADA was forbidden, and would result in disciplinary action, up to and including termination." [Filing No. 50-1, at ECF p. 4](). However, the statements in his affidavit directly conflict with his deposition testimony, in which he states he never requested FMLA leave or an accommodation under the ADA, and that he was never denied an accommodation for which he asked, either for his or his son's medical conditions. Preddie Dep. 54:21-56:13, 53:16-18 ([Filing No. 30-1, at ECF p. 8]()); Preddie Dep. 26:11-27:8 ([Filing No. 30-1, at ECF p. 3]()); Preddie Dep. 45:14-22 ([Filing No. 30-1, at ECF p. 6]()). The Seventh Circuit has held that "[w]here deposition and affidavit are in conflict, the affidavit is to be disregarded." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67-68 (7th Cir. 1995). To reiterate, where deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy. *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1297 (7th Cir.1993); *Adelman-Tremblay v. Jewel Cos., supra,* 859 F.2d at 520-21; *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 861-62 (7th Cir.1985). Here, there is no indication that the statements in the deposition resulted from mistake, confusion or lapse of memory.

In addition, Mr. Preddie's statements in his affidavit that his absences were protected by the FMLA or the ADA are legal conclusions which the Court need not accept as a basis for denying summary judgment. *Holman v. Revere Elec. Supply Co.*, 154 F. App'x 501, 504 (7th Cir. 2005); *see also Russell*, 51 F.3d at 67 ("We have been highly critical of efforts to patch up a party's deposition with his own subsequent affidavit. . . . Almost all affidavits submitted in litigation are drafted by the lawyers rather than by the affiants."). Therefore, the Court will not consider the

3

facts in Mr. Preddie's affidavit to the extent they conflict with his deposition testimony or state legal conclusions.

The Court notes, however, that it does not discredit Mr. Preddie's affidavit responses on the bases that it is self-serving, recognizing that the term "self-serving" must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment. See *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013).

**B.     Factual Background**

The following facts are viewed in light most favorable to Mr. Preddie as the non-moving party. BCSC is a public school corporation providing education to children in grades K-12. Mr. Preddie is an African-American male who has diabetes and high blood pressure. He also has a young son, who suffers from Sickle Cell Anemia. Mr. Preddie began working for BCSC as a second grade teacher at Rockcreek Elementary School ("Rockcreek") for the 2009-2010 school year under the terms of a Teacher's Temporary Contract. He was hired under a temporary contract because the permanent second grade teacher at Rockcreek had taken a leave of absence for the 2009-2010 school year. Mr. Preddie received positive reviews for his performance at Rockcreek during the 2009-2010 school year.

On April 15, 2010, Assistant Superintendent for Human Resources Dr. Linda DeClue ("Dr. DeClue") wrote Mr. Preddie a letter advising him that his temporary contract with BCSC would end on June 3, 2010, and that if he wished to be considered for a position with BCSC for the 2010-2011 school year, he would have to complete an application and submit it to BCSC. Dr. DeClue hand wrote on the letter language indicating that BCSC would like to find a teaching position for Mr. Preddie for the following school year. Dr. Clancy, the Principal of CSA-Fodrea, an elementary school within BCSC, reached out to Mr. Preddie and asked that he consider applying for a fifth

4

grade teaching position at CSA-Fodrea for the 2010-2011 school year. Mr. Preddie met with Dr. Clancy, and subsequently submitted his application as an external candidate for that position. Mr. Preddie was hired as a fifth grade teacher at CSA-Fodrea pursuant to the terms of a Regular Teacher's Contract, covering a period from August 13, 2010 until May 27, 2011. With his hiring, Mr. Preddie became the only African-American elementary school teacher within BCSC.

It appears that being a fifth grade teacher at CSA-Fodrea presented considerably more challenges than being a second grade teacher at Rockcreek. On one occasion a student brought a dangerous, several inch long knife to school and later tobacco products. Mr. Preddie sought assistance from Dr. Clancy as an administrator; however, she did not impose progressive discipline to curb the student's behaviors. ([Filing No. 50-1 at ECF p. 5](#)). Dr. Clancy also stopped the every-other-kid assignment protocol between Mr. Preddie and the other fifth grade teacher and the more disruptive students were directed to Mr. Preddie's class. When a so-called "star student" transferred to CSA-Fodrea, that student was redirected from Mr. Preddie's classroom to the classroom of a white colleague. *Id.*

Following the start of his new assignment at CSA-Fodrea, Dr. Clancy met with Mr. Preddie in November of 2010 to discuss with him concerns she had regarding deficiencies in his lesson plans, based upon complaints from substitute teachers. Dr. Clancy advised Mr. Preddie that he needed to improve his lesson plans and have them completed to ensure that a substitute teacher could effectively teach his students in the event of his absence. During this meeting, the subject of Mr. Preddie's son's sickle cell anemia came up and was discussed by him with Dr. Clancy. On November 3, 2010, Dr. Clancy sent an e-mail acknowledging her lack of knowledge about sickle cell disease, but offered her help and support to Mr. Preddie.

When Mr. Preddie had exhausted his eighteen (18) paid days of leave, Dr. Clancy advised him that any further leave would be without pay pursuant to his contract. Dr. Clancy also advised Mr. Preddie that he could apply for additional leave under FMLA, and informed him of the application process and appropriate contact person within BCSC to obtain an application. ([Filing No. 30-9](#) ECF p. 9 par. 25). Further, Mr. Preddie was aware of the benefits available under the FMLA by virtue of his prior employment. Preddie Dep. 26:11-16 ([Filing No. 30-1 at ECF p. 3](#)). However, at no time did Mr. Preddie request FMLA benefits from BCSC for his own or his son's medical issues. Preddie Dep. 53:16-18, 54:2-5, 56:11-13 ([Filing No. 30-1 at ECF p. 8](#)).

As required by BCSC policy, Dr. Clancy completed written evaluations of Mr. Preddie for each semester of the 2010-2011 school year. She completed a Provisional Evaluation Report on December 15, 2010, noting that Mr. Preddie needed improvement in two of the six areas evaluated, including classroom management and student motivation. The evaluation report and Teacher Performance Checklist identified areas in which Mr. Preddie's job performance needed improvement, stated a plan of action for that improvement, and provided comments by Dr. Clancy regarding both Mr. Preddie's positive and negative job performance issues. Pursuant to the plan of action, Dr. Clancy assigned two mentors to work with Mr. Preddie to help improve his job performance. Mr. Preddie made arrangements to work with only one of the mentors and he was able to learn some things from the mentor.

Throughout the school year, Mr. Preddie used both paid and unpaid leave due to complications of his diabetes or for medical emergencies related to his son. Sometime during the Spring semester before his final review, Mr. Preddie met with Dr. Clancy in her office and she told him that he could not miss any more time for his son as it was affecting his classroom. Preddie Dep. 42:19-43:12 ([Filing No. 30-1](#) ECF at p. 5). On another occasion she told Mr. Preddie "You've

6

missed a lot of school for yourself. You can't take off. Is there anybody that can go pick up your son … 'cause you've already missed enough days for yourself?" ([Filing No. 50-2 at ECF p. 5](#)).

On March 2, 2011, Dr. Clancy observed Mr. Preddie's classroom in connection with the preparation of the Provisional Evaluation Report for the second semester of the 2010-2011 school year. She observed that Mr. Preddie's approach to classroom management was very negative, and his students were not engaged in classroom activities. Dr. Clancy had also previously observed Mr. Preddie's classroom on a number of other occasions by conducting walkthroughs, which were a customary part of her practice as principal. Based upon her observations, Dr. Clancy noted that Mr. Preddie's job performance had not improved and he was still having problems with classroom management. Mr. Preddie was hospitalized on March 3-4, 2011 due to complications of his diabetes. ([Filing No. 50-6](#)).

Dr. Clancy completed a Provisional Evaluation Report and a Teacher Performance Checklist on March 11, 2011, based upon her observations of Mr. Preddie's job performance during the second semester of the 2010-2011 school year. That same day, Dr. Clancy met with Mr. Preddie to review and discuss his evaluations. She advised Mr. Preddie that she would recommend that his teaching contract not be renewed for the 2011-2012 school year and advised him of the reasons for her decision to make that recommendation, which primarily focused upon his classroom management and complaints from parents and other teachers. Dr. Clancy also followed up these points in an e-mail exchange between her and Mr. Preddie. On May 9, 2011, the BCSC board approved Dr. Clancy's recommendation of non-renewal of Mr. Preddie's contract. In a letter dated May 10, 2011, Dr. DeClue notified Mr. Preddie that the BCSC Board of School Trustees approved the non-renewal of his contract effective the end of the 2010-2011 school year. Reasons for non-renewal included: poor classroom management; no lesson plan or lesson plans

7

that were difficult to follow; inappropriate methods of disciplining students; repeated parent, student, and staff complaints about chaos; does not work well with colleagues; attendance is affecting student progress; and, lack of student engagement and interest. Additional facts will be addressed below as necessary.

## III. DISCUSSION

Mr. Preddie's Complaint asserts five counts against BCSC. Count I asserts claims under Title VII for unlawful discrimination on the basis of race, and/or for retaliation for asserting rights under Title VII. Count II asserts a failure to accommodate claim under the ADA. Count III alleges failure to provide Mr. Preddie with leave to which he was entitled under FMLA. Count IV alleges violations of the Civil Rights Acts of 1866, 1871, and/or 1991 due to discrimination on the basis of race. Count V alleges BCSC unlawfully retaliated against Mr. Preddie for his opposition to unlawful practices and/or the exercise of his rights under the Civil Rights Act of 1866 and 1871, Title VII, the ADA, and/or FMLA. The Court will address each claim in turn.

### A. ADA Claim

Mr. Preddie alleges that BCSC failed to provide him with a reasonable accommodation under the ADA, and also retaliated against him for his opposition to unlawful practices and/or the exercise of his rights under the ADA.[2] "In failure to accommodate claims, unlike disparate treatment claims, the *McDonnell Douglas* burden-shifting approach is not necessary or appropriate." *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001) (citing *Weigel v. Target Stores*, 122 F.3d 461, 464 (7th Cir. 1997)). The retaliation claim may be analyzed under the *McDonnell Douglas* burden-shifting approach, one element of which requires a showing that

---

[2] Mr. Preddie's Complaint does not, however, allege that he was terminated on the basis of his alleged disability, so the Court will not address the arguments related to disparate treatment, only failure to accommodate.

8

Mr. Preddie was performing his job in a satisfactory manner. *Stone v. City of Indianapolis Public Utils. Div.*, 281 F.3d 640, 642 (7th Cir. 2002).

As a threshold requirement, Mr. Preddie must establish that he is a qualified individual with a disability for his ADA claims to succeed. *Id.* at 572. This inquiry turns on whether Mr. Preddie, "with or without reasonable accommodation, *can perform the essential functions of the employment position* that [he] holds . . ." *Pohl v. United Air Lines, Inc.*, 194 F. Supp. 2d 840, 847 (S.D. Ind. 2002) (quoting 42 U.S.C. § 12111(8)) (emphasis in original). Failure to satisfactorily perform on the job will defeat a plaintiff's failure to accommodate and retaliation claims. *Id.* (citing *Emerson v. Northern States Power Co.*, 256 F.3d 506, 515 (7th Cir. 2001)).

BCSC has presented undisputed evidence that Mr. Preddie was not satisfactorily performing the essential functions of his position, thus not making him a "qualified individual with a disability" for which BCSC was required to provide reasonable accommodation, and not satisfying his *prima facie* showing of retaliation. Mr. Preddie received negative performance reviews for both the first and second semesters of the 2010-2011 school year on duties that neither party disputes were essential to his job as a school teacher, including classroom management, discipline, and creating adequate lesson plans. Although he asserts that Dr. Clancy undermined his authority and assigned him the more difficult students, Mr. Preddie acknowledged at the time of his negative performance review that he had "struggled to create a learning environment conducive to learning" and he had problems with classroom management, *See* [Filing No. 30-18, at ECF p. 2](#) ("I take full responsibility for my classroom management flounder."). The reasons for the non-renewal of his contract were explained to Mr. Preddie in his written reviews, in person, via e-mail, and in a letter from Dr. DeClue. [Filing No. 30-16](#); [Filing No. 50-9](#). Further, Mr. Preddie has not shown that the failure to adequately perform the outlined functions was related to his

9

diabetes, thus there would have been no accommodation BCSC could have provided to help him perform these duties. *See Amadio v. Ford Motor Co.*, 238 F.3d 919, 928 (7th Cir. 2001) ("When a disabled employee cannot perform the essential functions of a job, the court must consider whether any reasonable accommodation by the employer would help the employee to perform those functions."). Therefore, Mr. Preddie cannot satisfy an essential element of his failure to accommodate and retaliation claims under the ADA.

As mentioned earlier, one reason listed as cause for non-renewal of Mr. Preddie's contract is that his "attendance is affecting student progress". However, the Seventh Circuit has held that attendance is an essential element of most jobs. *Pohl*, 194 F. Supp. 2d at 847; *see also EEOC v. Yellow Freight System, Inc.*, 253 F.3d 943, 948 (7th Cir. 2001) ("Common sense dictates that regular attendance is usually an essential function in most every employment setting; if one is not present, he is usually unable to perform his job."). Mr. Preddie argues that his absences related to his diabetes were protected by the ADA, and BCSC wrongfully terminated him on the basis of these "leaves." While it is true that medical leave may constitute a reasonable accommodation in some circumstances, the intermittent absences of the type Mr. Preddie argues are protected by the ADA/FMLA is not the type of "leave" that is contemplated as being a reasonable accommodation under the ADA. The Seventh Circuit has explicitly rejected "an open-ended schedule that allows the employee to come and go as he pleases" by taking advantage of the employer's leave policy as an accommodation that would be reasonable under the ADA. *Amadio v. Ford Motor Co.*, 238 F.3d 919, 928 (7th Cir. 2001). Further, Mr. Preddie was never prohibited from taking time off in accordance with BCSC's attendance policy; he was merely advised that excessive absences made it difficult for him to effectively do his job as a teacher. *See* Preddie Dep. 54:21-56:13 (Filling No. 30-1, at ECF p. 8).

Mr. Preddie's failure to accommodate claim also fails for the additional reason that he did not request an accommodation for his diabetes. Because the ADA's reasonable accommodation requirement applies only to "known" disabilities, "a plaintiff must normally request an accommodation before liability under the ADA attaches." *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013) (quoting *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 608 (7th Cir. 2012)). Mr. Preddie stated in his deposition that he never requested an accommodation at CSA-Fodrea that he did not receive. Preddie Dep. 53:16-18 ([Filing No. 30-1, at ECF p. 8](Filing No. 30-1, at ECF p. 8)). This failure to request an accommodation precludes BCSC's liability on this claim.

Because the Court finds that Mr. Preddie was not able to perform the essential functions of his position for reasons unrelated to his diabetes, he is not a "qualified individual with a disability" under the ADA. In addition, BCSC cannot be subject to liability for failure to accommodate because Mr. Preddie never requested an accommodation. Therefore, Mr. Preddie's claims for retaliation and failure to accommodate fail, and BCSC is entitled to summary judgment on his ADA claims.

**B.     Title VII and § 1981 Claims**

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits an employer from acting in retaliation against employees who lawfully seek to or actually do participate in the process of investigating or pursuing a Title VII discrimination claim. 42 U.S.C. §2000e-3(a). Mr. Preddie has also alleged discrimination in violation of § 1981, which prohibits racial discrimination in the creation and enforcement of contracts. 42 U.S.C. § 1981. The applicable

legal standards on liability for race discrimination and retaliation are the same under Title VII and § 1981. *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004); *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1028 (7th Cir. 2004).

Plaintiffs alleging discrimination under Title VII and § 1981 may prove such discrimination using either the direct or indirect method of proof. *Andonissamy v. Hewlett–Packard Co.*, 547 F.3d 841, 849–50 (7th Cir. 2008). The direct method requires that the plaintiff produce evidence that the defendant was motivated by animus toward a protected class when he suffered some adverse employment action. *Id.* This may be done via direct evidence, which would entail something akin to an admission of discriminatory motive by the employer, or by presenting a "'convincing mosaic' of circumstantial evidence" that would permit the same inference without the employer's admission. *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012) (quoting *Rhodes v. Ill. Dep't of Trans.*, 359 F.3d 498, 504 (7th Cir. 2004)).

Under the indirect method, the plaintiff must make out a *prima facie* case of discrimination by showing evidence that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) a similarly situated co-worker who is not a member of the protected class was treated more favorably. *Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005); *Rodgers v. White*, 657 F.3d 511, 517 (7th Cir. 2011). If the plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to articulate a non-discriminatory reason for the adverse employment action. *Sun v. Bd. of Trs. of the Univ. of Ill.*, 473 F.3d 799, 814 (7th Cir. 2007). If the defendant does so, the burden shifts back to the plaintiff to submit evidence demonstrating that its explanation is pretextual. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). To establish pretext, a plaintiff must "identify such weaknesses, implausibilities, inconsistencies,

or contradictions in [defendant's] proffered reasons that a reasonable person could find them unworthy of credence and hence infer that [defendant] did not act for the asserted non-discriminatory reasons." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007).

Mr. Preddie has not provided sufficient evidence under the direct method of proof, so the Court will analyze Mr. Preddie's claims under the indirect method. Mr. Preddie is a member of a protected class and he suffered an adverse employment action when his contract was not renewed. However, Mr. Preddie cannot establish the remaining factors.

Mr. Preddie alleges that he was denied leave under FMLA because he is African-American.[3] Mr. Preddie has not identified that he received different treatment than similarly-situated persons who were not members of the same protected class. Rather, he asserts that he is attempting to prove reverse discrimination based on gender in that white females were granted leave in conjunction with complications from pregnancy and child birth. (Filing No. 51-19). Additionally, Mr. Preddie has presented no evidence that any of the white female teachers had similar performance issues. See *Everroad v. Scott Truck Systems, Inc.,* 604 F.3d 471, 478 (7th Cir. 2010). More importantly, Mr. Preddie has not brought a claim for sex discrimination so this argument fails. Mr. Preddie also argues, but provides no evidence, that an unidentified white male teacher with performance difficulties was given a "second chance". (Filing No. 51-3). But, even if the Court were to find that Mr. Preddie has satisfied this factor, he cannot satisfy the remaining requirement.

A requirement of showing a *prima facie* case of employment discrimination and retaliation under Title VII and § 1981 is evidence that the plaintiff was meeting the employer's legitimate

---

[3] In his Response brief, Mr. Preddie makes arguments regarding discrimination on the basis of his gender. However, a claim for gender discrimination was not included in his Complaint. A plaintiff may not subsequently amend his complaint during the summary judgment process; therefore, Mr. Preddie may not now assert claims for gender discrimination. *See Speer v. Rand McNaly & Co.*, 123 F.3d 658, 665 (7th Cir. 1997).

employment expectations. As previously discussed, the undisputed evidence shows that Mr. Preddie was not meeting BCSC's legitimate employment expectations for the relevant time period, based upon his negative reviews at CSA-Fodrea for both semesters of the 2010-2011 school year, and his acknowledgement that he had problems with classroom management. Unfortunately, Mr. Preddie's evidence of his positive performance evaluations during the 2009-2010 are not relevant to his claims, as he was working at a different school and teaching a different grade level. *See Salvadori v. Franklin Sch. Dist.*, 293 F.3d 989, 996 (7th Cir. 2002) (teacher could not satisfy the satisfactory performance requirement by showing that her performance was adequate for some period of time during her employment, and had to show that she was performing well at the time of her termination).

Because Mr. Preddie cannot show that he can satisfy his *prima facie* case of discrimination or retaliation, his claims under Title VII and § 1981 fail and BCSC is entitled to summary judgment on those claims.

**C.    FMLA Claim**

Count III of Mr. Preddie's Complaint asserts an FMLA interference claim, alleging that BCSC failed to provide him with FMLA leave to which he was entitled, and also that BCSC retaliated against him. The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise or the attempt to exercise, any right provided under [the Act]." 29 U.S.C. § 2615(a)(1). Employers are also prohibited from retaliating against an employee's use or attempted use of FMLA leave. 29 U.S.C. § 2615(a)(2). "The difference between the two theories is that a retaliation claim requires the employee to prove discriminatory or retaliatory intent while an interference claim only requires the employee to prove that the employer denied him entitlements

provided by the Act." *Pagel v. TIN Inc.*, 695 F.3d 622, 626 (7th Cir. 2012) (citing *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005)).

To prevail on an FMLA interference claim, Mr. Preddie must show that (1) he was eligible for FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to take leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled. *Pagel*, 695 F.3d at 627. The fatal flaw in Mr. Preddie's FMLA interference claim is that he did not provide sufficient notice of his intent to take leave under FMLA. While an employee need not specifically mention the FMLA to meet his or her obligation to provide notice, "an employee's reference to being 'sick' is generally not enough . . . ." *Id.* at 628. Mr. Preddie stated in his deposition that, despite being familiar with the process for taking leave under FMLA, he never inquired about taking FMLA leave while he was at CSA-Fodrea. Preddie Dep. 26:11-27:8 ([Filing No. 30-1, at ECF p. 3](#)). Mr. Preddie testified that he never asked to take leave because of his son's condition. Preddie Dep. 45:14-22 ([Filing No. 30-1, at ECF p. 6](#)). Because he cannot satisfy the fourth element of his *prima facie* case, BCSC is entitled to summary judgment on Mr. Preddie's FMLA interference claim.

Mr. Preddie's failure to request FMLA is also problematic for his retaliation claim. The *McDonnell Douglas* burden-shifting approach also applies to FMLA retaliation claims; thus, Mr. Preddie must show that (1) he engaged in a protected activity; (2) BCSC took adverse employment action against him; and (3) there is a causal connection between the Mr. Preddie's protected activity and BCSC's adverse employment action. *King v. Preferred Technical Grp.*, 166 F.3d 887, 892 (7th Cir. 1999). Because Mr. Preddie never took FMLA leave, nor attempted to exercise his FMLA rights, he cannot show he engaged in protected activity; thus, Mr. Preddie has not satisfied

15

the first prong of his *prima facie* case. Therefore, Mr. Preddie's retaliation claim fails, and BCSC is entitled to summary judgment on this claim.

**D.     Other Civil Rights Acts Claims**

Mr. Preddie's remaining claims under Count V of his Complaint are asserted under the Civil Rights Acts of 1866, 1871, and 1991. These claims are duplicative of other claims that have already been addressed, as the Civil Rights Act of 1866 is codified under 42 U.S.C. § 1981, and the Civil Rights Act of 1991 merely expanded the remedies available for violations of Title VII. *See* 42 U.S.C. § 1981a(b). Therefore, there is no need to separately address these claims.

The Civil Rights Act of 1871 is codified, in part, under 42 U.S.C. § 1983. Section 1983 claims are analyzed under the same standards applicable to Title VII and § 1981 claims. *Rodgers v. White*, 657 F.3d 511, 517 (7th Cir. 2011). As discussed above, Mr. Preddie cannot show that he was meeting BCSC's legitimate employment expectations, thus his § 1983 claim fails as well. BCSC is entitled to summary judgment on all of the civil rights claims asserted in Count V of Mr. Preddie's Complaint.

## IV.     CONCLUSION

BCSC's decision to not renew Mr. Preddie's contract may be harsh, considering that Mr. Preddie received positive reviews during his first year teaching as a second grade teacher, and following the March 11, 2011 evaluation, he acknowledged his deficiencies and expressed a willingness to improve. Additionally, Mr. Preddie's employment provided an opportunity for much needed diversity in the BCSC school district.[4] The Court, however, "does not sit as a super-

---

[4] Mr. Preddie was the only African-American teacher from 2004 through 2013 in the elementary level at BCSC. According to Dr. DeClue, "Columbus' African-American population is less than 2%" and recruiting African-American teachers in such communities is "a national recruiting concern". DeClue Dep. 24: 6-23 ([Filing No. 50-3 at EFC p. 6](#)).

personnel department that reexamines an entity's business decisions." *Balderston v. Fairbanks Morse Engine Div. of Coltec. Indus.*, 328 F.3d 309, 324 (7th Cir. 2003).

Because there is no evidence to show that Mr. Preddie's contract was not renewed for any reason other than his performance issues, BCSC's Motion for Summary Judgment ([Filing No. 28](#)) must be **GRANTED**, and Mr. Preddie's claims are **DISMISSED**. A separate judgment will follow.

**SO ORDERED.**

Date: 8/27/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Thomas J. Belcher
KELLEY BELCHER & BROWN
tbelcher@kelleybelcherbrown.com

James D. Masur, II
ROBERT W. YORK & ASSOCIATES
jmasur@york-law.com